**Arnold J. OWENS, et al.,
Plaintiff–Appellee,**

v.

**LOCAL NO. 169, ASSOCIATION OF WESTERN PULP AND PAPER WORKERS, Third–Party–Defendant,**

v.

**ITT RAYONIER, INC., Defendant–Third–Party–Plaintiff–Appellant.**

No. 91–35409.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1992.

Decided July 29, 1992.

As Amended Aug. 18, 1992.

Bruce Michael Cross, John F. Aslin, Nancy Williams, Perkins Coie, Seattle, Wash., for defendant-appellant ITT–Rayonier, Inc.

Donovan R. Flora, Longfelder, Tinker, Kidman & Flora, Seattle, Washington, James L. Holman, Tacoma, Wash., for plaintiffs-appellees Arnold J. Owens, et al.

Lewis K. Scott, Lane Powell, Spears Lubersky, Portland, Or., amicus curiae of Pacific Coast Ass'n of Pulp and Paper Manufacturers.

Kathryn T. Whalen, Bennett & Durham, Portland, Or., amicus curiae of Western Pulp and Paper Workers and Oregon AFL–CIO.

Ronald E. Richman, Chadbourne & Parke, New York City, amicus curiae of American Paper Institute, Inc.

Mona C. Zeiberg, The National Chamber Litigation Center, Inc., Washington, D.C., amicus curiae of The Chamber of Commerce of the U.S.

Jan S. Amundson, General Counsel, Quentin Riegel, Deputy Gen. Counsel, Washington, D.C., amicus curiae of The Nat. Ass'n of Manufacturers of the U.S.

Before: ALARCON, RYMER, and NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

This case arises from a labor dispute between Defendant employer ITT–Rayonier, Inc. and 91 employees who had brought an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216. The principal issue is whether the FLSA requires overtime compensation for the hours Plaintiffs were required to be available by telephone for "on-call" activities. We hold that under the facts of this case, Plaintiffs are not entitled to overtime compensation for that time. We reverse the district court's grant of summary judgment in favor of the Plaintiffs and remand with instructions to grant summary judgment in favor of the Defendant ITT–Rayonier.

## FACTS AND PROCEEDINGS BELOW

ITT–Rayonier operates a pulp mill in Hoquiam, Washington, which operates 24 hours per day, seven days per week. The Plaintiffs are mechanics who work daytime shifts Monday through Friday, 8 a.m. to 4:30 p.m. Rather than employing separate maintenance repair persons during the evening/nighttime shifts, ITT–Rayonier had an ongoing policy of phoning its regular daytime mechanics at home after hours to return to the plant to fix equipment. Such calls could occur at any time of night.

The Plaintiffs are represented by Local No. 169, Association of Western Pulp and Paper Workers (the "Union"),[1] whose collective bargaining agreement recognizes this procedure and contains provisions for call-in time compensation as follows: (1) time and one-half for time on the call-in (with one hour of pay guaranteed); (2) three hours of straight-time compensation (approximately $50) as "call-time"; and (3) a hot meal allowance (up to $10.00) if the call-in involved more than four hours of work. No compensation was required under the agreement for non-work periods when mechanics were subject to call-ins.

Up until late 1987, a mechanic's decision to accept a call-in was purely voluntary. However, in response to increased employee refusals, ITT–Rayonier decided to formalize the policy. The company drafted a proposal and circulated it to the Union and various employees for comment. After consulting with its legal counsel who examined Department of Labor regulations and advised that the proposed procedure would not result in overtime liability, on November 25, 1987, ITT–Rayonier implemented the following system:

Six rosters were developed pooling mechanics according to their respective areas of expertise (i.e. electricians, instrument workers, machinists, millwrights, oilers and pipe fitters). If a breakdown occurred, the company called the employee on the top of the crew roster, working down the list until someone agreed to come in. If a mechanic accepted a call-in, the acceptance was recorded with an "X" and the mechanic's name was moved to the bottom of the following week's list. If a mechanic refused a call-in or could not be reached, it was indicated by an "O" and the mechanic's name remained in place on the list. Thus, mechanics who responded infrequently to call-ins, for whatever reason,

---

1. Initially, ITT–Rayonier also brought a third-party suit against the Union. That action was dismissed by the district court, and ITT–Rayonier does not appeal that ruling.

eventually received more frequent calls. An employee was subject to the call-in policy during all times he was not actively working, except for vacation periods. Mechanics could leave forwarding numbers in order to be reached more easily, and those on top of the roster could request pagers. The range of the pager was limited to the immediate Aberdeen/Hoquiam area, and a mechanic with a pager was expected to reply within ten minutes of receiving a call.

Employees were required to accept a "fair share" of call-ins. Originally, the company wanted the new provision to require each employee to accept 50% of call-in requests, but complied with the Union's request for the more general "fair share" language. Rosters were posted so that employees could contest any error and know where they were in the call-in pool. Discipline could be imposed on employees who failed to comply, as measured under the just-and-sufficient-cause provision of the collective bargaining agreement.

Mechanics could select which calls to accept and, on the average, accepted about 30% of their calls.[2] Although some skills were more likely than others to be involved in repairs of breakdowns, mechanics accepted an average of six call-ins per year.[3] After implementation of the formal call-in system, four mechanics were disciplined with oral reprimands. The circumstances for these disciplinary actions were as follows: (1) one employee responded to one out of 15 calls over three months; (2) one employee failed to respond to any of 13 calls over three months; (3) one employee responded to one out of 22 calls over six months; and (4) one employee failed to

respond to any of 15 calls over three months and, a year later, did not respond to any of 13 calls in three months. In all cases, the reprimands were removed from the employee's record without further disciplinary action.

On October 14, 1988, the Plaintiffs filed suit under the FLSA, 29 U.S.C. §§ 207 and 216, seeking overtime compensation for the hours they were required to be available for on-call requests. No jury was requested. Following discovery, on February 8, 1990, ITT–Rayonier filed a Motion for Summary Judgment, and on February 15, 1990, Plaintiffs filed a Partial Motion for Summary Judgment on the issue of liability. The district court denied both motions by order dated June 21, 1990.

On July 18, 1990, the parties submitted an agreed pretrial order containing admitted facts. On August 7, 1990, a pretrial conference was held at which the district court informally stated that it was inclined to grant partial summary judgment in favor of Plaintiffs based on the agreed facts and the pretrial order. In response to the district court's informal ruling, ITT–Rayonier filed a Motion for Reconsideration of Preliminary Ruling on August 20, 1990. Neither party moved again for summary judgment.

At the hearing on liability on August 22, 1990, over Plaintiffs' objection, the district court permitted ITT–Rayonier to supplement the record with affidavits and interrogatory answers and depositions of some employees regarding Plaintiffs' off-duty activities. On August 24, 1990, ITT–Rayoni-

---

2. According to the uncontroverted data in the affidavit of ITT–Rayonier's maintenance manager, the responses to call-in attempts in 1988 and 1989 were as follows:

| | |
|---|---|
| Agreed to come in: | 30% |
| Not reached: | |
|   Not home (someone else answered) | 22% |
|   No answer at home | 29% |
|   Answering machine | 8% |
| Reached but did not come in: | |
|   Sick | 1% |
|   Other (baby-sitting, drunk, etc.) | 1% |
|   Declined to come in | 9% |

3. According to the uncontroverted data in the affidavit of ITT–Rayonier's maintenance manag-

er, the average number of times per year mechanics came in on calls during 1988 and 1989 were as follows:

| | 1988 | 1989 |
|---|---|---|
| Millwright (37 Plaintiffs) | 8.1 | 8.4 |
| Pipefitter (24 Plaintiffs) | 3.7 | 4.3 |
| Instrument (7 Plaintiffs) | 8.5 | 4.8 |
| Electrician (14 Plaintiffs) | 4.4 | 2.9 |
| Machinist (3 Plaintiffs) | 9.0 | 10.7 |
| Oiler (6 Plaintiffs) | 1.5 | 1.7 |
| | | |
| Weighted Average— | | |
|   All Mechanics | 5.9 | 5.8 |

er filed a second memorandum in opposition to summary judgment.

On September 26, 1990, the district court granted Plaintiffs' Motion for Summary Judgment on the issue of liability. ITT–Rayonier's Motion for Reconsideration was denied on November 16, 1990. A hearing on damages was held on March 1, 1991, and final judgment was entered on March 4, 1991, awarding the Plaintiffs actual and liquidated damages for 24–hour on-call time, including eating and sleeping time, amounting to nearly 58 million dollars. The district court did not hear live testimony nor did it conduct an evidentiary hearing.

ITT–Rayonier presently appeals, *inter alia,* from the Findings of Fact, Conclusions of Law and Judgment entered on March 4, 1991, and the order denying its motion for summary judgment entered on June 22, 1990.

## I.

## FAIR LABOR STANDARDS ACT

This Circuit has not yet addressed the general applicability of the Fair Labor Standards Act to "call-in" time.[4] FLSA 29 U.S.C. § 207(a)(1) requires overtime compensation for hours worked beyond 40 per week.[5] The Supreme Court has held that time spent waiting for work is compensable if the waiting time is spent "primarily for the benefit of the employer and his business." *Armour & Co. v. Wantock,* 323

U.S. 126, 132, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) (citation omitted). "Whether time is spent predominately for the employer's benefit [is] dependent upon all the circumstances of the case." *Id.* at 133, 65 S.Ct. at 168; *accord Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). For example, facts may show that the employee was "engaged to wait," which is compensable, or they may show that the employee "waited to be engaged," which is not compensable. *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163.

Although the Supreme Court has been reluctant to "lay down a legal formula" to determine whether waiting time is spent primarily for the benefit of the employer (*id.,* 323 U.S. at 136, 65 S.Ct. at 162), cases dealing with this question have looked at two predominant factors: (1) the degree to which the employee is free to engage in personal activities [6]; and (2) the agreements between the parties.[7]

## A. EMPLOYEE'S FREEDOM TO ENGAGE IN PERSONAL ACTIVITIES

■ The regulations at 29 C.F.R. §§ 785.14–17, which clarify the "waiting to be engaged" doctrine, clearly state that an employee is only compensable for idle time when "the employee is unable to use the time effectively for his own purposes." 29 C.F.R. § 785.15; *accord Halferty v. Pulse Drug Co.,* 864 F.2d 1185, 1189 (5th Cir. 1989). The Fifth Circuit has noted that "[t]his does not imply that the employee must have substantially the same flexibility

---

**4.** *But see, Rural Fire Protection Co. v. Hepp,* 366 F.2d 355 (9th Cir.1966) (addressing the narrower issue of whether sleeping time of on-premises employees is compensable overtime under the FLSA); *Porter v. General Electric Co.,* 208 F.2d 805 (9th Cir.1953) (same), *cert. denied,* 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954); *Irwin v. Clark,* 400 F.2d 882 (9th Cir.1968), *cert. denied,* 393 U.S. 1062, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969) (addressing the narrower issue of whether on-call employees are entitled to compensation for time spent voluntarily on employer's premises).

**5.** 29 U.S.C. § 207(a)(1) provides in relevant part: Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**6.** *See e.g., Skidmore,* 323 U.S. at 138, 65 S.Ct. at 163 (citing Wage and Hour Division, Interpretive Bulletin no. 13); *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 934 F.2d 671, 677 (5th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992); *Halferty v. Pulse Drug Co.,* 864 F.2d 1185, 1189 (5th Cir.1989).

**7.** *See e.g., Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163; *Brock v. El Paso Natural Gas Co.,* 826 F.2d 369 (5th Cir.1987); *Rousseau v. Teledyne Movible Offshore, Inc.,* 805 F.2d 1245 (5th Cir.1986), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987).

or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 677 (5th Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

Courts have considered a number of factors in determining whether an employee plaintiff had use of on-call time for personal purposes: (1) whether there was an on-premises living requirement[8]; (2) whether there were excessive geographical restrictions on employee's movements[9]; (3) whether the frequency of calls was unduly restrictive[10]; (4) whether a fixed time limit for response was unduly restrictive[11]; (5) whether the on-call employee could easily trade on-call responsibilities[12] (6) whether use of a pager could ease restrictions[13]; and (7) whether the employee had actually engaged in personal activities during call-in time[14]. Such a list is illustrative, not exhaustive. No one factor is dispositive. *See Berry v. County of Sonoma*, 763 F.Supp. 1055, 1058 (N.D.Cal.1991).

In accordance with the Supreme Court's holding that "[e]ach case must stand on its own facts" (*Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164), courts have weighed and balanced these factors as follows:

In *Bright v. Houston Northwest Medical Center Survivor, Inc.*, the en banc Fifth Circuit affirmed summary judgment against the plaintiff, a hospital biomedical equipment repair technician who was required to be on-call during his off-duty hours for emergency repairs, but was compensated only for the time actually worked. 934 F.2d at 672. Plaintiff was the only on-call technician, was required to respond to all calls, responded to an average of four to five per week, was required to be reachable by beeper, was required to be at the hospital within 20 minutes of getting a call, and could not be intoxicated to the degree that he could not work on the equipment if called. *Id.* at 673. In finding the plaintiff was able to use off-duty hours for his own personal purposes, the court balanced these restrictions with the plaintiff's freedom to go virtually anywhere within twenty minutes of the hospital and do anything within that limit, except for excessive alcohol consumption. *Id.* at 678. The court noted that the plaintiff "not only stayed at home and watched television and the like, but also engaged in other activities away from

---

**8.** *See e.g., Armour*, 323 U.S. at 134, 65 S.Ct. at 169 (held plaintiff firefighters restricted to the fire station were not free to use off-duty time for personal pursuits).

The rule promulgated by the Administrator, Wage and Hour Division, United States Department of Labor, strongly emphasizes the importance of this factor:

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17. While this rule is not controlling authority, it may be used by courts for guidance. *Skidmore*, 323 U.S. at 140, 65 S.Ct. at 164.

**9.** *See e.g., Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916–17 (8th Cir.1991) (requirement to remain within 35–50 mile radius in order to monitor radio transmission did not permit plaintiffs to use on-call time for their own purposes).

**10.** *See e.g., Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1538 (10th Cir.1991) (held plaintiff firefighters required to answer an average of four to five calls a day were not free to use off-duty time for personal pursuits), *cert. dismissed*, —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992).

**11.** *See e.g., Bright*, 934 F.2d at 678 (held plaintiff biomedical repair technician was able to engage in personal activities despite 20–30 minute required response time).

**12.** *See e.g., Brock*, 826 F.2d at 373 (held on-call policy not unduly restrictive in part because employees could trade on-call responsibilities).

**13.** *See e.g., Norton v. Worthen Van Serv., Inc.*, 839 F.2d 653, 655–56 (10th Cir.1988) (held drivers could purchase a simple paging devise to allay necessity of remaining by a phone).

**14.** *See e.g., Norton*, 839 F.2d at 655 (held plaintiffs' on-call time spent at homes of friends, at church, at laundromats, at restaurants, at pool halls, and at local gymnasium demonstrated their ability to engage in personal activities).

home, including his 'normal shopping' (including supermarket and mall shopping) and 'occasionally' going out to restaurants to eat." *Id.* at 673. While acknowledging that the on-call status made plaintiff's job "highly undesirable and arguably somewhat oppressive," nevertheless the court observed that "the FSLA's overtime provisions are more narrowly focused than being simply directed at requiring extra compensation for oppressive or confining conditions of employment." *Id.* at 678.

The Fifth Circuit has held similarly in four other cases which addressed this issue. In *Allen v. Atlantic Richfield Co.*, the court overturned the district court's summary judgment order in favor of plaintiff security guards despite the fact that plaintiffs were required to remain on the premises of the employer's refinery during a two-and-one-half-month production workers' strike. 724 F.2d 1131 (5th Cir.1984). The court held evidence that "[t]he guards were free to sleep, eat at no expense, watch movies, play pool or cards, exercise, read, or listen to music during their off-duty time" was sufficient to raise a question of fact as to whether the time was spent predominantly for the employer's benefit. *Id.* at 1137. In *Rousseau v. Teledyne Movible Offshore, Inc.*, the court held plaintiff barge workers were not entitled to compensation for off-duty time they were required to remain on the premises of the barge because "plaintiffs were free to sleep, eat, watch television, watch VCR movies, play ping-pong or cards, read, listen to music ... [and] seldom or never did any physical work after their shift ended". 805 F.2d 1245, 1248 (5th Cir.1986), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). In *Brock v. El Paso Natural Gas Co.*, where each evening one of the employees of a two-to-five person rural gas pipeline company satellite station was required to remain at home in order to hear an emergency alarm, the court held on-call time was not compensable because employees were able to trade their on-call responsibilities, employees not on call could leave the site at will, the alarms were infrequent, and on-call duty usually did not interfere with all the normal activities in and

around the home (e.g., eating, sleeping, entertaining guests and watching television). 826 F.2d 369, 373–74 (5th Cir.1987). And in *Halferty v. Pulse Drug Co., Inc.*, the on-call hours were not compensable overtime because the plaintiff ambulance dispatcher "could visit friends, entertain guests, sleep, watch television, do laundry, and babysit ... [and thereby] use the time for her own purposes." 864 F.2d at 1189.

In the Tenth Circuit, two of three cases dealing with on-call compensation held overtime not compensable because the employees were free to use off-duty time as they wished. In *Boehm v. Kansas City Power and Light Co.*, power-company linemen were called in whenever a storm or emergency occurred. 868 F.2d 1182, 1183 (10th Cir.1989). Following a union instituted overtime boycott, the power company implemented a formal policy requiring a 30% call-in acceptance rate, and imposing progressive discipline for noncompliance. *Id.* In upholding the trial court's JNOV in favor of the company, the court weighed the restrictions of the policy against the plaintiff's actual freedom to engage in personal pursuits:

> [A]lthough plaintiffs spent some time at home that they otherwise would not have spent because of the company's on-call policy, defendant's call-out policy as written and as applied was not so restrictive that a jury reasonably could conclude that the time was spent predominantly for the employer's benefit. Plaintiffs were free to leave the company's premises and did so. Plaintiffs were free to use their off-duty time as they wished, provided that they could be contacted and report for work one-third of the time that they were called.

*Id.* at 1185.

In *Norton v. Worthen Van Serv., Inc.*, plaintiff van drivers who transported railroad crews and were required to be "near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes," were disciplined if they failed to promptly respond, and could be fired if they were disciplined three times. 839 F.2d 653, 654 (10th Cir.1988). In deny-

ing compensation for time spent on call, the Tenth Circuit reasoned the plaintiffs had an opportunity to pursue personal business between assignments and could have allayed the necessity of staying by the phone by purchasing a simple paging devise. *Id.* at 655–66.

In the present case, the restrictions imposed by ITT–Rayonier's call-in policy are far less severe than those restrictions imposed in the above cases which all found plaintiffs were sufficiently free to engage in their own activities. The mechanics here were not required to remain on the premises [15]; they were not required to remain at home to receive calls [16]; they were not required to respond to all calls [17]; they were not subject to a fixed acceptance rate [18]; they received an average of only six calls a year [19]; they were not required to be reachable by beeper [20]; and, those who did not request beepers were not expected to respond to a call within a fixed time.[21]

Moreover, the mechanics in the present case actually engaged in far more extensive personal activities than plaintiffs in the above cases. The record shows that during the time they were subject to calls: Plaintiffs attended out-of-town sporting events; engaged in regular golf games and tournaments in and out-of-town; engaged in regular bowling games and tournaments in and out-of-town; attended church; took trips out-of-town to visit family on weekends or during the week; engaged in other employment; worked at building homes or vacation homes; took week-end pleasure trips out-of-town; coached or regularly attended Little League and other children's sports; participated in community and church activities; worked on automobiles for themselves and others; walked or ran regularly or competitively; attended school or classes; visited friends; dined at restaurants more than once a week; watched movies; went fishing or hunting; maintained homes and gardens; assisted elderly parents; square danced regularly; participated in school musical productions; took care of family shopping. Such a broad variety of pursuits demonstrates that each mechanic had the option to engage in personal activities of his choice while on call.

The three cases which have found on-call time compensable are readily distinguishable from the present case. The Supreme Court's decision in favor of plaintiffs in *Armour* was predicated on the fact that the company's restrictive on-premises requirement meant the firefighters were "liable to be called upon at any moment, and not at liberty to go away." *Armour,* 323 U.S. at 133, 65 S.Ct. at 168. Unlike the *Armour* firefighters, the mechanics in the present case are not required to remain on the premises and, in fact, did pursue other personal activities during on-call time.

The Tenth Circuit's decision to compensate plaintiff firefighters in *Renfro v. City of Emporia, Kan.,* was based on the restrictive frequency with which the plaintiff firefighters were called back. 948 F.2d 1529, 1538 (10th Cir.1991), *cert. dismissed,* — U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992). Unlike the firefighters in *Renfro,* who were required to respond to an average three to five callbacks per 24–hour period, the mechanics in the present case only responded to an average of five to six callbacks *per year. See also Renfro v. City of Emporia, Kan.,* 729 F.Supp. 747, 751 (D.Kan.1990) (providing further facts that firefighters had to be able to hear pager at all times, respond to every call received, and report to work within 20 minutes of being paged).

And, in *Cross v. Arkansas Forestry Comm'n,* the Eighth Circuit found that plaintiff forestry service employees were not able to use the call-in time for their

---

**15.** *Cf. Allen,* 724 F.2d at 1133; *Rousseau,* 805 F.2d at 1247.

**16.** *Cf. Brock,* 826 F.2d at 370.

**17.** *Cf. Bright,* 934 F.2d at 673.

**18.** *Cf. Boehm,* 868 F.2d at 1183.

**19.** *Cf. Bright,* 934 F.2d at 674 (four to five calls per week).

**20.** *Cf. Bright,* 934 F.2d at 673.

**21.** *Cf. Bright,* 934 F.2d at 673; *and Norton,* 839 F.2d at 654.

own purposes based on the following factors: their ability to travel was confined because they were required to respond to radio dispatches with only a 50 mile transmission radius; they could not attend events or participate in activities that would prevent them from monitoring radio transmissions; their ability to entertain in their homes, attend social gatherings, attend church, watch television or read was limited because they had to devote attention to radio transmissions; they could not attend events that would cost much money because they might be required to immediately leave an activity in order to respond to an emergency call within 30 minutes; employees did not receive respite from the on-call status because they were subject to call 24-hours per day. 938 F.2d 912, 916–17 (8th Cir.1991). Unlike the plaintiffs in *Cross,* the mechanics in the present case were not required to affirmatively monitor radio dispatches. Instead, they received respite because each was only one of a pool of employees called and they were not physically constrained by a transmission radius (except for those employees who voluntarily requested pagers).

In sum, ITT–Rayonier's call-in policy is more lenient than the policies in any of the cases cited, and the present Plaintiffs were able to use the call-in time for a greater range of activities than were the plaintiffs in any of the above cases. Therefore, we conclude that Plaintiffs were not so restricted during their on-call hours as to be effectively engaged to wait by their employer.

■ The Plaintiffs in the present case misstate the test when they argue that the waiting time was spent "primarily for the benefit of the employer" because ITT–Rayonier, not the mechanics, benefitted from the on-call policy. The test is not the importance of on-call work to the employer, rather the test is focused on the employee and whether *he is so restricted during on-call hours as to be effectively engaged to wait. See Armour,* 323 U.S. at 132–33, 65 S.Ct. at 168; *Skidmore,* 323 U.S. at 136–39, 65 S.Ct. at 162–64.

Under this test, Plaintiffs' remaining arguments (i.e., that they experienced duress under the company's progressive discipline policy; that they could receive call-ins without advance notice; and that the "fair share" standard was too vague) are irrelevant because they are unrelated to whether an employee can use call-in time for personal pursuits.

### B. THE AGREEMENTS BETWEEN THE PARTIES

■ Another important factor in determining if the on-call time was spent predominantly for the benefit of the employer is whether the policy was based on an agreement between the parties. "Although the existence of an agreement may not be controlling in all cases, it is usually relevant to the compensability issue." *Rousseau,* 805 F.2d at 1248; *accord Berry,* 763 F.Supp. at 1059. The Plaintiffs in the present case argue there was no agreement between the parties concerning the call-in procedure because the policy resulted from a unilateral act on the part of the company that was disfavored by the employees. Case law does not support this conclusion.

The Supreme Court set the stage for an inquiry into agreements between the parties:

> [An inquiry into compensability of on-call waiting time] involves [1] scrutiny and construction of the agreements between the particular parties, [2] appraisal of *their practical construction of the working agreement by conduct....* The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was.

*Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163 (remanding the case for further evaluations and fact-finding) (emphasis added).

In *Rousseau,* the Fifth Circuit found that although the employee barge workers did not like the conditions imposed by the company, there was an agreement nonetheless because the employees had been informed of the policy and continued to work under those terms. 805 F.2d at 1248 ("continuance of employment can be evidence of an

implied agreement to the terms of that employment"); *accord General Electric Co. v. Porter,* 208 F.2d 805, 813 (9th Cir. 1953) (Ninth Circuit held unilateral action of an employer was impliedly accepted when employees reported to work and worked pursuant to employer's new policy), *cert. denied,* 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954).

Similarly, the Plaintiff mechanics in the present case may not have liked the company's formal call-in system, but by continuing to work, they constructively accepted the new terms. There is an additional inference of acceptance because Plaintiffs were employed under a collective bargaining agreement that provided overtime compensation for actual call-in work, but not for other off-duty time. And, finally, four of the present Plaintiffs expressly accepted the new terms inasmuch as they became mechanics after the new policy was in effect. *Cf. Brock,* 826 F.2d at 371 (employees voluntarily accepted on-call terms) *and Allen,* 724 F.2d at 1136 (same).

## II.

## SUMMARY JUDGMENT

We now consider the district court's summary judgment decisions in light of the discussion set forth above. A grant of summary judgment is reviewed *de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.,* 809 F.2d 626, 629 (9th Cir. 1987).

The district court's third conclusion of law constitutes its basis for granting Plaintiffs' Motion for Summary Judgment:

3. Based on the facts admitted by the parties, there is no genuine issue of material fact as to the following:

(a) A plaintiff cannot use the time during which he is subject to call-in pursuant to the defendant's call-in policy of November 20, 1987, to date, effectively for his own purposes, because he must remain continuously available for call-ins or face penalty, formal discipline and the threat of discharge, he is never relieved of the duty to be available for call-ins, except for certain specified periods such as vacation, and he is never told in advance that he will not have to respond to call-ins during his time away from the mill.

We hold that the district court erred in granting summary judgment to the Plaintiffs and in denying the Defendant's summary judgment motion.

### A. *Plaintiffs' Motion for Summary Judgment*

In a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "A 'material fact' is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv. Inc.,* 809 F.2d at 630. The court must view all inferences to be drawn from the evidence lodged in a light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608. Such inferences may be drawn from subsidiary facts contained in affidavits, attached exhibits, and submitted depositions. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The district court's grant of summary judgment is erroneous in three ways. First, the court's conclusion that an employee cannot use time "effectively for his own purposes" does not follow from the "facts admitted by the parties." Nothing in the stipulated facts refers to Plaintiffs' personal use of on-call time. Nor does the district court point to a particular stipulated fact that leads to the court's conclusion that an employee "must remain continuously available" and that an employee "is never relieved of the duty to be available."

Second, the district court failed to view *all* of the evidence in the light most favorable to the nonmoving party. *See Diebold,* 369 U.S. at 655, 82 S.Ct. at 994. By relying solely on "facts admitted by parties," the district court improperly disregarded the

subsidiary facts contained in affidavits, attached exhibits, answers to interrogatories and depositions submitted by ITT–Rayonier. *See id.*

Third, Plaintiffs failed to carry their burden of showing there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). ITT–Rayonier presented volumes of evidence in the form of depositions, witness affidavits and answers to interrogatories showing Plaintiffs engaged in a wide variety of personal activities during the on-call hours, an essential factor in the Supreme Court's "primarily for the benefit of the employer" test. The Plaintiffs, on the other hand, presented no evidence whatsoever regarding Plaintiffs' personal use of on-call time, and failed to contest or rebut ITT–Rayonier's evidence. Inasmuch as there is no evidence anywhere in the record which disputes the evidence presented by ITT–Rayonier, and this evidence must be viewed in a light most favorable to ITT–Rayonier, Plaintiffs have failed to discharge their burden.

### B. *Defendant's Motion for Summary Judgment*

The district court denied ITT–Rayonier's Motion for Summary Judgment early in the proceedings. Therefore, in considering this issue, we may only look to the record that was before the district court as of that date. Even on this record, it is apparent that judgment for ITT–Rayonier is not only warranted, but compelled.

The standard for evaluating ITT–Rayonier's Motion for Summary Judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

ITT–Rayonier's evidence consisted of affidavits of company managers detailing the on-call procedures, and the attorney who reviewed the call-in policy for potential FLSA violations. Plaintiffs' evidence included depositions of ITT–Rayonier managers showing that accepting call-ins is a condition of employment, that failure to comply would lead to progressive discipline, that a mechanic could receive a call-in at any time without notice, and an assertion that the "fair share" requirement was so vague that Plaintiffs had no way of knowing what would constitute cause for discipline. Plaintiffs also submitted the deposition of an expert witness who concluded that Plaintiffs did not *feel* they had any free time or control over their lives.

The facts underlying the call-in policy were not in dispute. In fact, Plaintiffs conceded "there can be no real factual dispute as to the way this call-in policy is written and how the policy is being administered." The dispute arises from Plaintiffs' conclusion, drawn from these facts, that "common sense" suggests an employee who faces accrued penalties which lead to disciplinary action is "necessarily restricted in the number and variety of activities he may pursue." [Plaintiffs' Reply Memorandum In Support of Cross–Motion for Summary Judgment at 13–14; ER 480–1.] Such a conclusion does not constitute a factual disagreement sufficient to require submission to a jury.

Plaintiffs also fail to counter the evidence presented by ITT–Rayonier. Although Plaintiffs were entitled to every legitimate inference in their favor, none of Plaintiffs' evidence is relevant to the "benefit of the employer" test articulated in *Armour* and its progeny. They submitted no material evidence to dispute ITT–Rayonier's evidence that the on-call policy was more lenient than the policies in all the cases dealing with the issue, nor any evidence that the mechanics could not use off-duty time for their own purposes. On its face, the policy was not so restrictive as to effectively engage the Plaintiffs to wait. *See* discussion *supra* Section I.

Application of the "benefit of the employer" test to the record as of June 21, 1990, also leads us to conclude the evidence was so one-sided that ITT–Rayonier must prevail as a matter of law. Plaintiffs were not subject to an on-premises living requirement; Plaintiffs were not required to

stay at home or anywhere else; Plaintiffs were not required to accept all call-ins and could accept at a time most convenient to them [22]; the company made call-ins easier for Plaintiffs on the top of the list by providing pagers; and, Plaintiffs impliedly agreed to the formal call-in system by continuing to work under the new terms.

We REVERSE the district court's grant of summary judgment in favor of Plaintiffs, and REMAND [23] with instructions to grant summary judgment in favor of Defendant ITT–Rayonier, Inc.[24]

---

22. Plaintiffs did not contest depositional testimony of Lynn Johnson, an ITT–Rayonier maintenance supervisor, who stated, "60% of the times we call a mechanic, we receive no answer, or there is an answering machine, or the employee is not at home."

23. The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
28 U.S.C. § 2106, *see generally, High Tech Gays v. Defense Industrial Security Clearance Office,* 895 F.2d 563, 581 (9th Cir.1990).

24. In so holding we need not reach ITT–Rayonier's Portal Act defense to liability and liquidated damages.