John A. ALLEN, et al.,
Plaintiffs-Appellants

v.

ATLANTIC RICHFIELD CO., et al.,
Defendants-Appellees.

No. 82–2407.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1984.

---

Browning & Associates, Dennis M. Beck, Rick Bensik, Houston, Tex., for plaintiffs-appellants.

Bracewell & Patterson, V. Scott Kneese, Tom Melo, Horace E. Campbell, Jr., Houston, Tex., for defendants-appellees.

Before POLITZ, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This case arises under that provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.,* which requires certain employers to pay time-and-a-half overtime pay for any hours over forty worked in a week. Plaintiffs appeal from a jury verdict which found that time spent off-duty but within the confines of the employer's plant was non-compensable time. Defendants argue on appeal that the trial judge erred as a matter of law when he found that the plaintiffs had standing to sue. We affirm the order of the trial court.

### I. FACTS

Appellants, twenty-two security guards at Atlantic Richfield Company's ("Arco's") petroleum refinery in Houston, brought suit alleging that appellee owed them additional overtime compensation for hours worked

during a strike by production employees. The strike lasted from about January 8 through March 30, 1980. Appellants normally worked three eight-hour shifts. During the strike, however, they worked twelve-hour on-duty shifts each day. They were paid for their on-duty shifts and for any actual work required during the normal off-duty twelve-hour period. Otherwise the guards were not paid for off-duty time when they were required to remain inside the refinery.

Arco's production employees, who are represented by the Oil, Chemical & Atomic Workers Union (OCAW), have a contract with Arco that expires every other January. In 1961, 1969, and 1980, production employees struck for new contracts. During those strikes, Arco operated its refinery with non-striking personnel, including security guards. During the first OCAW strike, in January 1961, Arco worked out an arrangement with the guards under which the guards worked every other twelve-hour shift but were required to remain in the refinery unpaid during the remaining twelve-hour off-duty period. The guards were paid at a higher than usual hourly rate for the first forty hours spent on duty each week, and were paid one and a half times the higher rate for each hour per week over forty. During off-duty time, the guards ate, slept, and pursued recreational activities inside the refinery.

Since the 1969 strike, Arco has engaged in regular pre-strike planning in the November or December preceding each contract expiration. This planning included a meeting with guards' union representatives. Sometime in the mid-1970's, the stepped-up wage rate was first put in writing; in each relevant year thereafter an identical agreement as to the stepped-up wage rate was executed. These written agreements did not address the specific work hours nor did they address the arrangement for shift and gate assignments. The guards' union made no effort up through 1979 to negotiate for a change in the past strike compensation practice. At trial Arco introduced evidence that at the pre-strike meeting in 1978, John Hebert, a union officer and a plaintiff in

this case, jokingly asked if pay would be for twenty-four hours a day for any strikes in 1979. A company representative replied in the negative because that had not been the practice in the past.

A brief illegal or wildcat strike, lasting about sixteen hours, occurred in January 1979 during an extension of the wage reopener provision. Because it was an emergency situation and not a planned contract expiration strike, guards were paid under their regular collective bargaining agreement. As distinguished from a typical contract expiration strike, there was no twelve-hour shift arrangement and no higher wage rate. There were no special quarters, cafeteria arrangements, or recreational facilities. Apparently, most of the appellants worked during this wildcat strike. The majority of them had never worked a contract bargaining strike.

Preparation for the January 1980 strike, here at issue, had included the usual pre-strike meeting with guards' union representatives. At this meeting, Arco representative Gary Hogue confirmed with the guards' union representatives the stepped-up wage rate of $12.41 per hour, an increase of approximately $3.00 per hour. The guards accepted the wage rate proposed by Arco. Hogue testified that at the December 20 meeting he told guards' union representatives that the proposed stepped-up rate was intended to be paid only for the twelve-hour on-duty time. There were no further meetings with the union regarding hours between the December 20 meeting and the beginning of the strike on January 8, 1980. Arco, however, points to evidence in the record of discussions between guards which indicated that they understood they were to remain in the refinery on a twenty-four hour basis and only be paid for the twelve-hour on-duty shifts. Bill Box, who interviewed all guard applicants for Arco from about 1974 to 1980, testified that he explained the contract expiration strike compensation arrangement to at least nine guards (plaintiffs) during interviews.

At a meeting on January 8 or 9, shift and work assignments for the 1980 strike were made. The guards voiced no complaint with respect to the compensation arrangement or work schedule. During the initial stages of the strike appellants were required to remain in the refinery on a twenty-four hour basis during both their twelve-hour on-duty shifts and their off-duty time. After this initial period of time, a third and then a half of the guards, while still working every other twelve-hour shift, were allowed to leave the refinery on their off-duty shifts.

Dormitory-type or travel trailer sleeping quarters were provided for appellants while they resided within the refinery. Food was provided at no cost to the employees in a cafeteria which was open around the clock. So long as they remained inside the refinery, appellants were free to utilize various recreational facilities which were provided. Although the record is unclear as to how many times or for how long guards were called to active service during their off-duty time, both parties agree that interruptions to nonwork time were infrequent. Guards were paid for those interruptions to off-duty time.

In the trial court appellants requested overtime compensation for the time spent on-call both in the plant and outside the refinery. There is no issue about overtime premium based upon the stepped-up rate for all hours over forty arising from the twelve-hour on-duty shifts. It was paid. The jury found in favor of Arco on each of the three interrogatories submitted to it: (1) the jury found that time spent on off-shift status inside the refinery was not work time; (2) the jury found that time spent on off-shift status outside the refinery was not work time; and (3) the jury found that there was an agreement between Arco and the guards that the off-shift time of the guards during the strike would not be work or compensable time. The court entered a final judgment for Arco and the guards appeal the jury's finding on the first and third interrogatories.

## II. STANDING

Arco argues that this suit should have been dismissed in the trial court for lack of jurisdiction since none of the twenty-two named plaintiffs ever filed written consents with the court. Section 16(b) of the FLSA states that:

An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Section 256 of the Portal-to-Portal Act states that:

[I]n the case of a collective or class action instituted under the Fair Labor Standards Act ... it shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

The provisions requiring written consents were made law by the Portal-to-Portal Act of 1947. The Act was passed to combat the problem of one employee bringing suit on behalf of himself and "other employees similarly situated", often hundreds and sometimes thousands of employees, without naming the other employees. *Deley v. Atlantic Box & Lumber Corp.*, 119 F.Supp. 727, 728 (D.N.J.1954). Thus the defendant employer would not know which other members of the class were actually going to participate, and the employer could be surprised by their testimony or other evidence at trial. As well, some courts had held that

a favorable judgment for the named plaintiff was res judicata for the entire class. The clear intent of the provisions set out above was to make the members of the class of unnamed plaintiffs who wished to participate in, and be bound by, the action identify themselves for the benefit of the defendant. *Ibid.* The class members were allowed to do so by filing a written consent to the suit.

It is clear that a plaintiff does not need to file a written consent if an individual action is maintained. He or she is the named plaintiff. In this case, each claimant is a named plaintiff. This suit consists of a number of individual actions, not a collective or class action subject to sections 16(b) and 256. The twenty-two plaintiffs through their lawyer alleged individual causes of action and sought individual relief in the form of individual damage claims. None of the individual plaintiffs sought to represent others of the named plaintiffs as well as themselves. These twenty-two named plaintiffs, then, have simply joined their actions as permitted by Fed.R.Civ.P. 20(a); their causes of action arose out of the same series of transactions or occurrences. Although in their complaint plaintiffs stated that they sought to represent "other similarly situated Atlantic Richfield employees," the action never evolved into a collective or class action since no unnamed plaintiff ever came forward and filed a written consent to the suit, asking to be made a party plaintiff. The only parties to the suit were named plaintiffs represented by the lawyer who signed the complaint.

Relying on similar facts and reasoning, other courts have held that named individuals who jointly filed suit under the FLSA were not required to file written consents with the court. *See, e.g., Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Mitchell v. Mace Produce Co.,* 163 F.Supp. 342, 346 (D.Md.1958). We conclude that parties named in a suit, who have hired a lawyer to file a complaint on their behalf, have clearly indicated their consent to suit. The statute does not require additional time-and-resource-consuming filings.

## III. STATUTORY RIGHTS TO OVERTIME PAY

Appellants argue that the trial court erred in admitting evidence of a "past practice" of guards staying on employer premises twenty-four hours a day for the duration of a strike, and only being paid for twelve-hour on-duty shifts and emergency on-duty time. Likewise they argue that no evidence should have been admitted to show that the past practice resulted in an agreement, just prior to the strike in question, regarding what was noncompensable time. It is urged that such evidence was irrelevant and prejudicial since an "employee's right to a minimum wage and to overtime pay under the Act ... cannot be abridged by contract or otherwise waived." *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 1444–45, 67 L.Ed.2d 641 (1981). Appellants assert that an agreement regarding work hours is not a defense to a case brought under the FLSA.

It is true that an agreement for an employee to work fifty hours a week at a non-overtime rate or to work at less than the minimum wage would not be enforceable, since an employee's right to a minimum wage per hour or overtime pay for hours over forty hours a week is not subject to waiver by the employee. We wrote in *Mitchell v. Turner,* 286 F.2d 104, 106 (5th Cir.1960), that no "understanding between an employer and employees that the rest periods were to be non compensable [is] a legal contract." At issue was whether employees should have been compensated for two fifteen-minute rest breaks in their work day. We held that the test for determining whether the rest breaks were compensable time was whether the time was spent primarily for the employer's benefit, a fact question and not controlled by contract. We therefore remanded the case to the district court.

Our statement that an agreement on what would be considered work time would not be enforceable was made to caution the

trial court that such an agreement would not be controlling as to for whose benefit the time was spent, not that such an agreement was irrelevant. That an agreement between the parties is one factor that the fact finder properly should consider, however, was made plain in *Skidmore v. Swift & Co.*, 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). The Supreme Court concluded that "[w]hether in a concrete case such time falls within or without the Act is a question of fact.... This involves scrutiny and construction of the agreements between the particular parties ... and all of the surrounding circumstances."

The appellants themselves rely heavily upon *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981). Yet in that case, the Supreme Court commented that "what constitutes the 'workweek,' or 'principal' rather than 'preliminary or postliminary' activities" are complex mixed questions of fact and law. The dissent in that case characterized such questions as entirely factual. *Id.* 101 S.Ct. at 1450 (Burger and Rehnquist, JJ., dissenting).

In the leading early case of *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944), the Court stated that "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." The trial court properly admitted evidence of an agreement between Arco and the plaintiff guards since such an agreement was a circumstance to consider in determining whether the off-duty time in the plant was spent primarily for Arco's benefit.

## IV. AGREEMENT BETWEEN THE PARTIES

█ Appellants assert that there was simply no evidence of an agreement between the guards and Arco regarding time to be spent in the plant. We find evidence in the record, however, to support the jury finding of an agreement. Arco's practice of holding a pre-strike planning meeting before each contract expiration date during which the higher wage rates were discussed indicates at least that the guards were aware of the possibility of a strike. At the 1978 pre-strike meeting union member John Hebert raised a question regarding wages and was told that guards would be paid only for twelve hours a day. Gary Hogue, who convened the 1979 pre-strike meeting, testified that he told guards at that meeting they would be paid only for twelve hours of each day. Bill Box, the Arco employee who interviewed all guard applicants, testified that he told numerous guards when he interviewed them of the strike arrangement whereby guards stayed at the plant full-time but were paid only for twelve hours. Although there was contradictory testimony, it was the jury's province to decide which testimony to credit. The jury's answer by special interrogatory that there was an agreement regarding work time is supported in the record. Therefore it must stand.

## V. COMPENSABLE TIME

█ Appellants assert that they were entitled to summary judgment in the trial court on the issue of whether the twelve hours per day spent off duty in the refinery were hours spent working. They claim that there was no competent evidence to show that they were there for anything but the employer's benefit. There are many instances, however, in which time spent on the employer's premises is not compensable working time. A foreman in residence on the employer's premises, in an apartment in which the telephone is connected to the plant switchboard, is not compensated for all time spent on the premises. *Walling v. Lippold,* 72 F.Supp. 339, 350 (D.Neb.1947). Night switchboard operators who are permitted to sleep on premises when their presence is not required at the switchboards are not entitled to compensation for the entire duration of their shift. *Howard v. Southern Continental Telephone Co.,* 72 F.Supp. 276 (M.D.Tenn.1944). Oil well pumpers who are on duty for twelve-hour shifts but work only part of the time they are actually available for duty need not be

compensated for time they are available but not active. *Thompson v. Loring Oil Co.,* 50 F.Supp. 213 (W.D.La.1943).

In *Skidmore, supra,* seven employees regularly stayed in the company fire hall or within hailing distance three and a half to four nights a week. Their only duty on such nights was to answer any alarms. The employees were paid for the time spent answering alarms on the infrequent occasions the alarms were set off. 65 S.Ct. at 162. The Supreme Court looked to administrative interpretation of the FLSA for guidance in determining whether time spent off duty constituted work time. The administrator suggested that sleeping and eating time would not ordinarily be considered work time, but that all other on-call time might constitute work time. *Id.* 65 S.Ct. at 164. The Court concluded that, in general, whether time was compensable working time depended " 'upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call, without being required to perform active work.' " *Ibid.*

In their argument appellants do not break down the twelve off-duty hours into hours spent sleeping, eating, and engaging in recreational activities. They argue that all twelve hours were spent primarily for the employer's benefit.

Arco presented evidence at trial that the guards were called to duty during their off hours only a few times during the strike. The guards were free to sleep, eat at no expense, watch movies, play pool or cards, exercise, read, or listen to music during their off-duty time. Such evidence was sufficient to raise a fact question as to whether all the guards' free time, including sleeping and eating time, was spent predominantly for the employer's benefit. Therefore it was proper for the district court to deny plaintiffs' motion for summary judgment on that issue since it is proper to grant summary judgment only when there is no genuine issue of material fact. *McKee v. McDonnell Douglas Technical Services Co.,* 700 F.2d 260, 262 (5th Cir. 1983).

The jury's answer that the time the guards spent in the refinery while off duty was not compensable time indicates that, having failed to distinguish the different types of activities engaged in during that time and in light of the specific facts of this case, appellants failed to carry their burden of proving the time was work time.

## VI. LYING IN WAIT

The final argument appellants raise is that the district court erred in refusing to instruct the jury that "the time spent lying in wait for the safety of the employer's property is considered to be compensable time under the Fair Labor Standards Act." Appellants incorrectly cite *Armour, supra,* as the authority for such a charge.

In *Armour,* privately employed firefighters were required to stay on the employer's factory premises for twenty-four hours at a time. From eight a.m. to five p.m. they had active duties, but from five p.m. until the following morning they were simply on call and were free to sleep, eat, and otherwise amuse themselves. The Court affirmed the district and appellate court findings that sleeping and eating time was not work time, but that other on-call time was work time in the light of all the circumstances and the arrangements between the parties. The Court stated:

Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property *may* be treated by the parties as a benefit to the employer. *Whether time is spent predominantly for the employer's benefit or for the em-*

*ployee's is a question dependent upon all the circumstances of the case.*

65 S.Ct. at 168 (emphasis added).

The instruction requested by appellants did not correctly state the law. The instruction given by the district court in this case was that "a person hired to wait to work is working while waiting. A person waiting to be hired is not working while waiting.... In deciding who predominantly benefited from the time which was spent, you must consider all the circumstances of the case." We find the court's instruction to have been adequate since appellants did not differentiate at all as to how the "lying in wait" time was spent.

The opinion of the district court is affirmed in all respects.

AFFIRMED.