**C.M. ROUSSEAU, Jr., et al.,**
**Plaintiffs-Appellants,**

v.

**TELEDYNE MOVIBLE OFFSHORE, INC., Defendant-Appellee.**

No. 86–4050.

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1986.

Wendell G. Lindsay, Jr., Randall G. Wells, Baton Rouge, La., for plaintiffs-appellants.

Greg Guidry, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for defendant-appellee.

Before THORNBERRY, DAVIS, and HILL, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from an order dismissing plaintiffs' claim for wages under the Fair Labor Standards Act ("hours worked claim") and from a judgment notwithstanding the verdict on plaintiffs' claims of retaliatory discharge ("the retaliation claim"). We affirm the district court's dismissal of the hours worked claim. However, because we believe that reasonable minds could differ on the merits of the retaliation claim, we reverse the district court's judgment notwithstanding the verdict.

A complete review of the factual background in this case is contained in the district court's well-reasoned opinion. *Rousseau v. Teledyne Movible Offshore, Inc.*, 619 F.Supp. 1513 (D.C.La.1985). We will not belabor the complete factual details here, but will note salient facts as they become important.

Defendant-appellee Teledyne Movible Offshore, Inc. ("Teledyne") is a large company engaged in what presently remains of the domestic offshore oil industry. The company owns three derrick barges. All sixty-three plaintiff-appellants ("the employees") in this case are employed by Teledyne on the derrick barges.

*The Hours Worked Claim*

The employees worked for Teledyne on a "hitch" basis, spending seven full days working and living on the barges and then seven full days not working or living on the barges. The basis of the employees' hours worked claim is Teledyne's "no leave" policy. This policy required the employees to remain on the barges during their hitches. Thus, even when the employees were not engaged in actual physical labor, Teledyne required them to remain on board the barges. The employees received compensation only for the time spent in active labor.

During the great oil boom of the 1970s, the derrick barges spent most of their time offshore working on various jobs. As the price of oil dropped, fewer offshore jobs became available and the barges spent increasingly more time docked. In addition, Teledyne reduced the number of working hours. Nonetheless, Teledyne's no leave policy did not change—even when the barges were docked, the employees were required to remain on board the barges during their off-duty time. This "non-labor" time remained uncompensated.

The employees brought suit under the Fair Labor Standards Act ("FLSA"), claiming that Teledyne owed them compensation for the time spent on the barges not allocable to eating or sleeping. 29 U.S.C. §§ 201–219.[1]

The FLSA provides in pertinent part that no employer "shall employ any of his employees ... for a work week longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours at a rate not less than time and one-half the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The employees argue that they were "employed" by Teledyne during the time they were required to remain on the barges, even though they were not engaged in active labor.

The Supreme Court has held that time spent by employees not actively engaged in physical labor can be compensable time under the FLSA. *Armour and Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). However, the Supreme Court has also noted that issues of compensabili-

---

1. The employees attacked the no leave policy as applied when the barges regularly operated offshore as well as when the barges were regularly docked. The offshore claim was dismissed in a pretrial partial summary judgment. The remainder of the claim was tried before the bench. The employees make only a half-heart-ed attempt to appeal the summary judgment, preferring to concentrate their argument on the time spent on the docked barges. Our agreement with the district court's analysis of the compensability issue extends to all time spent on the barges, whether offshore or docked.

ty are highly fact specific. An inquiry into compensability

> involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service and its relation to the waiting time, and all the surrounding circumstances.... The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was.

*Skidmore v. Swift and Co.*, 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

■ The district court found that Teledyne and the employees operated under an agreement that the employees would only receive compensation for hours spent in physical labor. This is a finding of fact. *Id.; see also Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984). This finding must stand unless clearly erroneous. Fed.R.Civ.P. 52(a). Although the existence of an agreement may not be controlling in all cases, it is usually relevant to the compensability issue.

■ The record supports the district court's finding of an agreement between Teledyne and the employees. Representatives of Teledyne testified to informing the employees of the policy at various times. Indeed, many of the employees who testified admitted at least some awareness of the policy.

■ Of course, it is clear that the employees did not like the no leave rule. But their dislike does not negate the existence of an agreement. As the district court pointed out, continuance of employment can be evidence of an implied agreement to the terms of that employment. *Shepler v. Crucible Fuel Co.*, 140 F.2d 371, 374 (3rd Cir.1949). In any event, as we cannot say that the district court's finding of an agreement is clearly erroneous, it must stand.

■ The employees also argue that the time they spent on the barges not actively working was time spent primarily for the benefit of the employer and thus compensable time under the FLSA. As did the district court, we reject this argument.

This conclusion is consistent with our holding in *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984). In that case, 22 security guards brought suit against their employer, Atlantic Richfield ("Arco"), alleging a statutory right under the FLSA to overtime pay. During a strike by production employees, Arco required the security guards to work 12 hour shifts each day. Arco required the guards to remain within the confines of the refinery during their 12 hour off duty period. Arco compensated the guards for any actual work done during this off duty time. Otherwise, this off duty time was not compensable.

In recognizing that there are instances in which time spent on the premises of the employer is not compensable time, the *Allen* court noted that "whether time was compensable working time depended 'upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call, without being required to work.'" *Id.* at 1137 (quoting *Skidmore*, 323 U.S. at 138, 65 S.Ct. at 163). The *Allen* court found evidence in the record to support a conclusion that the guards were free to engage in a variety of recreational activities during their off duty hours. This created a fact question sufficient to preclude summary judgment on the issue of compensable time. *Allen*, 724 F.2d at 1137.

In the present case, the record reflects that Teledyne offered its employees a variety of recreations and amusements during their off duty times. According to the district court,

> [t]he stipulated facts and evidence show that during their off duty time on the barges, the plaintiffs were free to sleep, eat, watch television, watch VCR movies, play pingpong or cards, read, listen to music, etc. They seldom or never did any physical work after their shift ended and if they did they were paid for it pursuant to the agreement.

*Rousseau*, 619 F.Supp. at 1520.

Moreover, as the district court pointed out, the record indicates that the employees

actually benefited from the no leave policy, at least potentially. By remaining on the barges during the off duty times, the employees could take advantage of any jobs that might come up on short notice, with the accompanying possibility of overtime work. In short, any benefits derived by Teledyne from the no leave policy do not, on these facts, create a claim for compensable time.

### The Retaliation Claim

The employees' claims of retaliatory discharge were tried to a jury. The plaintiffs alleged that they were laid off because of the filing of the hours worked lawsuit. Teledyne attributed the layoffs to a precipitous decline in the offshore oil business. The jury returned a verdict for the employees.

The district court granted Teledyne's motion for judgment notwithstanding the verdict, noting that "there was no evidence whatsoever that the defendant's decision to lay off the plaintiffs was in retaliation for the wage and hour lawsuit. The evidence and inferences point so strongly in favor of Teledyne Movible Offshore that reasonable minds could not arrive at a contrary verdict." *Rousseau*, 619 F.Supp. at 1525.

■ We review the district court's decision under the now familiar standard of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc). We must scrutinize the record carefully and view all the evidence in the manner most favorable to the party opposing the motion. *Spurlin v. General Motors Co.*, 528 F.2d 612, 614 (5th Cir.1976). The judgment n.o.v. can only be sustained if we find that no reasonable juror could have rationally concluded that Teledyne discharged the plaintiffs in retaliation for the filing of the hours worked lawsuit.

■ We disagree with the district court's statement that there is "no evidence" to support the plaintiffs' claims. First, there is the so-called "bulletin board incident." A representative of the company, Mr. Ken Theriot, placed a copy of the lawsuit on a company bulletin board and, during a speech to the employees, indicated that Teledyne might suffer severe economic hard-

ship were the suit successful. Some employees testified that the speech was threatening. Mr. Theriot explained his actions as merely an attempt to explain the difference between the lawsuit and the then pending union organizational drive. He explained that the lawsuit was distinct from the union and that an employee did not have to join the union in order to assert any rights in the lawsuit.

In other words, the testimony concerning the bulletin board incident is conflicting. A reasonable juror could have concluded that the posting of the lawsuit and the speech by Mr. Theriot was intended to intimidate the employees who had filed the FLSA claim. Thirty-seven of the sixty-three plaintiffs were in fact terminated. Viewed in the light most favorable to the employees, the bulletin board incident provides a basis for a reasonable juror to make a finding of retaliation. The evidence is by no means compelling, especially given the stipulation by the parties that the economic slowdown played some part in the layoffs. Nonetheless, the evidence precludes a judgment n.o.v.

■ The employees' other major support for the retaliation claim was testimony concerning Teledyne's refusal to implement a Partial Compensation Plan ("PCP"). This state program would have allowed the employees to work for Teledyne on a part-time basis and also draw unemployment compensation. Again, the record was conflicting on the merits of this program. Teledyne representatives testified that the program was considered as an alternative to a layoff. The company adopted a lay off plan as a more effective way of cutting costs. Witnesses for the plaintiffs testified that the PCP program would have saved the company more money than a layoff. As with the bulletin board incident, this evidence is by no means compelling. Still, a reasonable juror could have concluded that the company's failure to implement the PCP and its subsequent termination of the plaintiffs indicated retaliation on the part of Teledyne.

■ Although we reverse the district court's judgment n.o.v., our disposition does not result in a reinstatement of the jury's verdict. In granting the judgment n.o.v., the district court also granted a conditional motion for new trial. This decision will not be disturbed "in the absence of a clear abuse of discretion." *McClain v. Seaboard Coast Line R.R. Co.*, 473 F.2d 357, 359 (5th Cir.1973). Because we find no such abuse in this case, we remand the retaliation claim pursuant to the district court's order.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.