**Marianne RICH, Plaintiff,**

v.

**DELTA AIR LINES, INC., Defendant.**

**Civil Action No. 1:94–cv–2847–RLV.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 7, 1996.

Archer D. Smith, III, Fred P. Anthony, Harmon, Smith, Bridges & Wilbanks, Atlanta, GA, for plaintiff.

Hunter R. Hughes, III, Jessica Joan–Marie Hagen, Rogers & Hardin, Atlanta, GA, Andrew J. Fisher, Delta Air Lines, Inc. Law Department, Atlanta, GA, for defendant.

## ORDER

VINING, Chief Judge.

The plaintiff filed the instant action, alleging that the defendant suspended and terminated her in violation of the Family and Medical Leave Act of 1993 ("FMLA"). This matter is currently before the court on the defendant's motion for summary judgment. For the reasons set forth below, this court **GRANTS** the defendant's motion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff, Marianne Rich, was hired by the defendant, Delta Air Lines, Inc., as a domestic flight attendant in June 1987. For each flight on her schedule, the plaintiff was required to report to the airport before the scheduled departure time. This is generally referred to as one's "sign-in" or "report time." Depending upon the particular flight, the plaintiff was required to sign-in either sixty or ninety minutes prior to departure time. The time that a plane stops at the gate at the destination airport is referred to as the "block-in" time.

After working an assigned flight, the plaintiff would either remain at the airport to work another flight or be "released" from duty. Subsequent to working an assigned flight and after the plane had "blocked-in," the plaintiff would occasionally perform some brief duties, such as saying good-bye to and thanking passengers as they deplaned. According to the plaintiff, when she did have to perform these deplaning duties, she would spend approximately twenty to thirty minutes engaged in such activities. She also asserts that on at least five occasions she was required to stay on board her last flight of the day, after it had blocked-in, to be "debriefed" by the flight crew. In addition, the plaintiff and the defendant's other flight attendants were also required by the defendant to attend jet recurrent training on an annual basis.

The duty hours of flight attendants are comprised of those hours between their "sign-in" at the beginning of the day through the time that their last flight blocks-in. The defendant maintains written hours of service

records for each flight attendant which identify the number of hours worked by a flight attendant, commencing when the flight attendant first "signs-in" until the time of arrival of her last flight of the day. The defendant does not, however, maintain records of the time between a flight attendant's last "block-in" time and his or her release time. Consequently, the time that the plaintiff and other flight attendants spent assisting in deplaning activities after their last flight, engaged in flight crew "debriefing" sessions, and in jet recurrent training is not officially recorded by the defendant.

During the plaintiff's employment tenure with the defendant, she was absent from work on a number of occasions. The plaintiff was absent from work for a significant number of days from 1988 to 1991 due to various work-related injuries. Neither the plaintiff nor the defendant asserts that these absences have any relevance to this action. However, from August 1993 until April 1994, the plaintiff missed quite a few more days from work. She asserts that these absences were due to serious medical illnesses, *inter alia*, a chronic respiratory tract infection, inflammation of the gums, and pelvic endometriosis and dysplasia of the cervix, all of which she contends are covered and protected by the FMLA. On April 23, 1994, the plaintiff was suspended without pay by the defendant upon the written recommendation of her immediate supervisor, Jackie Owens, for her excessive absenteeism and for allegedly falsifying a doctor's certificate to explain one of her absences. She was subsequently terminated by the defendant on May 20, 1994, for these same reasons. The plaintiff contends that the absences upon which the defendant based its suspension and termination decisions qualify under the FMLA as acceptable leave time. Accordingly, she asserts that the defendant unlawfully interfered with her protected rights to take FMLA leave by suspending and terminating her.

## II. *LEGAL DISCUSSION*

### A. The Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Bradbury · v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.*

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be

"genuine" they must have a real basis in the record. *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a "rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citations omitted).

## B. The FMLA Claim

The plaintiff contends that she was entitled under the FMLA to unpaid leave for all of the absences that formed the basis of the defendant's decisions to suspend and terminate her. The defendant asserts that the plaintiff is not an eligible employee under the FMLA and is therefore not entitled to any benefits thereunder. The defendant further contends that even if the plaintiff is an eligible employee under the FMLA, the absences which formed the basis of its decision to terminate her were not caused by a "serious health condition" as that term is defined by the FMLA. Because this court finds that the plaintiff is not an eligible employee under the FMLA, the court grants the defendant's motion for summary judgment.

■ The FMLA provides that, under certain circumstances, an employer must allow an eligible employee to take up to twelve work weeks of leave during any twelve-month period because of a serious health condition that prevents the employee from performing the functions of her position. 29 U.S.C. § 2612(a)(1)(D). A covered employer, like the defendant, cannot "interfere with, restrain, or deny the exercise of or attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). An eligible employee is one who has worked for a covered employer for at least twelve months, has worked at least 1,250 hours during the previous twelve months, and has been employed at a worksite where there are least fifty or more employees within a seventy-five mile radius. 29 U.S.C. § 2611(2)(A); 29 U.S.C. § 2611(2)(B)(ii). An employee must satisfy each of these criteria independently to be eligible for FMLA leave. 29 C.F.R. § 825.110. Thus, an employee who has less than 1,250 hours of service in the previous twelve-month period is not entitled to the protections of the FMLA and may not maintain an action under the Act. *Id.*

■ To determine if an employee has the requisite 1,250 hours of service with her employer, the FMLA expressly directs courts to examine the principles for calculating hours of service that have been established under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. 2611(2)(C); 29 C.F.R. § 825.110(c). While the FLSA itself does not explicitly set out the manner in which hours worked should be computed, the Supreme Court has enunciated a test that courts should use in making such a determination. The Court has stated that the test for determining if an employee's time constitutes working time is whether the "time is spent predominantly for the employer's benefit or for the employee's." *Skidmore v. Swift & Co.,* 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944); *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). That test requires consideration of the agreement the parties, the nature and extent of the restrictions, the relationship between services rendered and on-call time, and all surrounding circumstances. *Skidmore,* 323 U.S. at 137, 65 S.Ct. at 163. In other words, hours spent by an employee engaged in her principal work activities are considered to be hours worked under the FLSA. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 690, 66 S.Ct. 1187, 1194, 90 L.Ed. 1515 (1946). By contrast, "Periods during which an employee is completely relieved from duty and which are long enough to enable [her] to use the time effectively for [her] own purposes are not hours worked." 29 C.F.R. § 785.16. Whether a certain set of facts and circumstances constitutes work for purposes of the FLSA is a question of law. *Birdwell v. City of Gadsden,* 970 F.2d 802, 807 (11th Cir.1992).

### 1. The burden of proof

Under the FMLA, if "an employer does not maintain an accurate record of hours worked by an employee, including for employees who are exempt from FLSA's requirement that a record be kept of their hours worked ... the employer has the burden of showing that the employee has not worked the requisite hours." 29 C.F.R. § 825.110(c). In such cases, the employer

must be able to clearly demonstrate that the subject employee did not work the 1,250 hours during the previous twelve months in order to claim that the employee is not eligible under the FMLA. *Id.*

■ In the case at bar, it is uncontested that the defendant did not maintain accurate written records of all of the hours actually worked by the plaintiff, since the plaintiff is not subject to the FLSA record-keeping requirements for purposes of minimum wage or overtime compliance. The defendant acknowledges that it did not record the time that the plaintiff spent saying "goodbye" to and thanking deplaning passengers after the plaintiff's last flight in a given duty period blocked-in. Moreover, the defendant concedes that it did not record the time that the plaintiff spent on an aircraft engaged in a flight crew "debriefing" session or for any annual jet recurrent training the plaintiff may have had from 1992 until her termination in May 1994. Thus, under the Department of Labor regulations, the plaintiff is presumed to have worked 1,250 hours during the previous twelve-month period. 29 C.F.R. § 825.110(c); 29 C.F.R. § 825.500(f)(1). To overcome this presumption, the defendant must clearly demonstrate that the employee did not work 1,250 hours during the previous twelve months. 29 C.F.R. § 825.110(c).

## 2. The relationship between the defendant's internal leave policies and the benefits provided under the FMLA

■ Because the defendant has an internal policy of providing certain leave benefits to flight attendants and others who work at least 540 hours, the plaintiff initially contends that the 540 hour standard, as opposed to the 1,250 hour standard, should be utilized in this case to determine the plaintiff's eligibility for certain leave benefits under the FMLA. This court disagrees. As the defendant points out, the FMLA expressly and unequivocally provides that for an employee to be eligible for protection under the Act, she must have worked 1,250 hours for her employer in the previous twelve-month period. *See* 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110. The plaintiff cannot use the de-

fendant's internal policy to amend the explicit coverage provision adopted by Congress.

■ To support her theory, the plaintiff refers this court to 29 C.F.R. § 825.700. This section addresses the interaction of an employer's internal policies and practices with the employee's rights under the FMLA. The section provides in relevant part, "An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700(a). The plaintiff apparently construes this section to mean that when an employer has an employee benefit program or plan that is more generous than the benefits provided by the FMLA, then the employee automatically has a cause of action, *under the FMLA,* to enforce the terms of the program or plan if the employer deviates from such a program. Section 825.700 does not, and could not, however, create a federal cause of action under the FMLA to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA. The Department of Labor has no regulatory power to rewrite, and clearly did not rewrite, the FMLA in such a manner.

■ The purpose of this regulation is to ensure that the FMLA is not interpreted to abrogate any currently existing employee-benefit plan. Therefore, if an employer has a plan or program more generous than the FMLA, then the FMLA will not supersede or reduce those more generous benefits which the employer has chosen to provide. In essence, the regulation is merely a truism which emphasizes that employers are legally bound by valid contractual agreements made with their employees regarding employment benefits. An employer's contractual obligations are distinct, however, from the regulation at issue and the FMLA itself.

■ Because the FMLA itself neither expressly or impliedly gives the Department of Labor the authority to create a federal cause of action based upon a voluntary employee program, any regulations promulgated by the Department creating such a cause of action would be invalid. *See, e.g., Bowen v. Georgetown University Hospital,* 488 U.S.

204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979). An executive agency cannot make substantive rules of law unless it has been so empowered by Congress. *Id.* Consequently, even if the Department of Labor did intend in section 825.700 to authorize a private cause of action under the FMLA, such a regulation would be invalid. In order for the plaintiff to be classified as an "eligible employee" under the FMLA, she must have worked at least 1,250 hours in the previous twelve-month period as Congress has specifically mandated.

### 3. The hours of service computation

It is uncontroverted that the defendant maintained accurate records of the hours that the plaintiff actually worked from the time that the plaintiff first signed-in until the time of the arrival of her last flight of the day. Likewise, it is undisputed that between August 5, 1993, the effective date of the FMLA, and May 19, 1994, the date of the plaintiff's termination, the plaintiff never had, excluding time spent on layovers, assisting with deplaning activities after her last flight of the day, in "debriefing" sessions with flight crews, and in jet recurrent training, more than 1,000 hours of service in any previous twelve-month period. *See* Moon's First and Second Affidavits; Defendant's Reply Brief, Exhibits A and B (official records of the defendant outlining the plaintiff's duty hours). The defendant has introduced evidence showing that from August 5, 1992 to August 5, 1993, the plaintiff logged only 725:40 hours of service. *See* Moon's First Affidavit, para. 7; Defendant's Reply Brief, Exhibit B. From April 16, 1993 to April 22, 1994, she logged only 876:30 hours of service. *Id.* The plaintiff does not dispute the accuracy of these records. As mentioned, however, these records do not reflect the time that the plaintiff spent on layovers, assisting with deplaning activities after her last flight of the day, in "debriefing" sessions with flight crews, and in jet recurrent training. The plaintiff contends that all of the time that she spent engaged in such activities should be included in the hours of service computation.

■ While this court agrees that the time the plaintiff spent engaged in deplaning activities, "debriefing" sessions, and jet recurrent training should be included in the hours of service computation, this court finds that the time that the plaintiff spent on layovers should not, as a matter of law, be included in the hours of service calculations. The plaintiff's own deposition testimony, along with the two affidavits of Mattie Moon, the defendant's senior flight attendant scheduler, demonstrate that the plaintiff spent a minimal amount of time engaged in deplaning or deboarding activities. *See* Plaintiff's Dep., p. 67–68; Moon's First Affidavit, para. 6. The plaintiff testified that she spent approximately twenty to thirty minutes at the end of some of her duty periods, but prior to her official release from work, saying "goodbye" to and thanking deboarding passengers. *See* Plaintiff's Dep., p. 67–68. Assuming this to be true, the "hours worked" by the defendant can be easily calculated.

■ According to the undisputed time records of the defendant and the testimony of Ms. Moon, the plaintiff worked eighty-seven duty periods between August 5, 1992, and August 5, 1993. *See* Moon's First Affidavit, para. 6. Assuming that the plaintiff worked thirty minutes after each "block-in" for each duty period during that year, she would have worked 43:30 hours from "block-in" to release from August 5, 1992 to August 5, 1993. The plaintiff worked 107 duty periods from April 16, 1993 to April 22, 1994. *Id.* at para. 7. Assuming that she worked thirty minutes after each "block-in" for each duty period during that year, the plaintiff would have worked 53:30 hours from "block-in" to release during that period. When these hours are added to the plaintiff's corresponding duty hours (the number of hours from the plaintiff's first "sign-in" until the time of the arrival of her last flight of the day) for those periods, one can easily compute the plaintiff's "hours of service." The following chart is illustrative:

| PERIOD | DUTY HOURS | + | DUTY PERIODS × .5 HOURS | = | SERVICE HOURS |
|---|---|---|---|---|---|
| 8/5/92—8/5/93 (one year before FMLA became effective) | 725:40 | | 87 × .5 = 43:30 | | 769:10 |
| 4/22/93—4/22/94 (one year before last day worked) | 876:30 | | 107 × .5 = 53:30 | | 930 |

These computations show that the plaintiff is far short of the 1,250 hours of service which would entitle her to FMLA coverage. Based upon the evidence in the record, she never had more than 1,000 hours of service in any twelve-month period. The defendant has thus clearly demonstrated, through official time sheets, affidavit testimony, and the plaintiff's own deposition testimony, that the time that the plaintiff spent assisting in deplaning and other activities does not qualify her as an eligible employee under the FMLA.[1]

The plaintiff attempts to salvage her claim by contending that the time that she spent on layovers should be considered hours of service. It is undisputed that if the hours the plaintiff spent on layovers were part of the hours worked computation, the plaintiff would qualify as an eligible employee under the FMLA. For example, the defendant's records reflect that between August 5, 1993 and April 22, 1994, the plaintiff spent approximately 798 hours on layovers. *See* Defendant's Supplemental Brief, Exhibit A. The defendant asserts that the time that the plaintiff spent on layovers does not constitute hours worked for purposes of FMLA coverage regardless of how such time is classified, i.e., "off-duty" or "on-call." It does contend that all flight attendants who are on layovers are classified as "off-duty," however, and that each flight attendant can use the time during her layover for her own purposes.

 Periods during which an employee is completely relieved from duty and which are lengthy enough to allow her to use the time effectively for her own purposes are not hours worked under the FMLA. *See* 29 C.F.R. § 785.16. The question of whether an

---

1. In her brief opposing the defendant's motion for summary judgment, the plaintiff also claims that the defendant failed to officially record other time that she spent actually working on the defendant's behalf. *See* Plaintiff's Brief, p. 26. First, the plaintiff contends that she was required to remain on the defendant's planes on several occasions in order to be "debriefed" by the flight crew when a particular plane had experienced mechanical problems, a passenger had a medical emergency during a flight, and under other unusual circumstances. *Id.; see also* Plaintiff's Dep., p. 70–84. When asked by the defendant's counsel about each specific instance of "debriefing," the plaintiff indicated that she recalled five such sessions and that they lasted anywhere from twenty minutes to one hour and a half. *See* Plaintiff's Dep., p. 70–84. Assuming without deciding that these debriefing incidents are includable in the hours worked calculation, these additional minimal hours do not come close to helping the plaintiff meet the 1,250 hour threshold required for FMLA coverage. Even if this court doubled or tripled both the number of "debriefing" sessions and the duration of each, the plaintiff would still be far short of the required 1,250 hour threshold. Second, the plaintiff claims that the defendant failed to record the time she spent annually in jet recurrent training, activities she contends should be included in the hours worked calculation. Again, assuming without deciding that such time is includable in the hours worked computation, the defendant has introduced undisputed evidence which demonstrates that the plaintiff spent no more than 28:15 hours in jet recurrent training from January 1992 until her termination in May 1994. *See* Moon's Second Affidavit, para. 5. These hours do not even push the plaintiff's "hours worked" computation over the 1,000 hour mark, a mark which is itself far short of the required 1,250 hour threshold.

employee is working for the purposes of FLSA depends upon the degree to which the employee may use her time for personal activities. *Birdwell*, 970 F.2d at 807. This question has been formulated as whether the time spent is predominantly for the employer's benefit or for the employee's benefit. *Id.* The Eleventh Circuit has explained that it is rare that an employee's off-duty time will constitute hours worked; as a result, an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA. *Id.* at 810; *see also Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923 (11th Cir.1987); *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir.1991); *Halferty v. Pulse Drug Co.*, 864 F.2d 1185 (5th Cir.1989); *Boehm v. Kansas City Power and Light Co.*, 868 F.2d 1182 (10th Cir.1989); *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653 (10th Cir.1988); *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir.1986); *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131 (5th Cir.1984).

In her deposition testimony, the plaintiff admits that she was generally free to use the time on a layover for her own purposes. *See* Plaintiff's Dep., p. 86–88. She stated that she could use the time to go to a concert, go to dinner, go to a library, or go shopping. *Id.* She does contend, and the defendant has acknowledged, however, that there are some restrictions on a flight attendant's activities during a layover. First, the plaintiff asserts that she could not consume alcohol or other drugs during a layover. In addition, she contends that before leaving her hotel during a layover she was required to leave a number where she could be reached, if she planned to stay away from the hotel for more than six hours. The plaintiff claims that these restrictions buttress her position that the time spent on layovers should be included in the hours worked computation for purposes of the FMLA. This court disagrees.

The defendant classifies all of its flight attendants who are on layovers as "off-duty" employees. *See* Whittle Affidavit, para. 4. While on a layover, a flight attendant employed by the defendant is not required to carry a beeper, nor is she required to wait by the phone at the hotel. There are limited rules, sometimes referred to as standards of conduct, that all of the defendant's off-duty flight attendants, including those on layover, must follow. *See* Owens Dep., p. 74; Whittle Affidavit, paras. 3–8; Defendant's Supplemental Brief, Exhibits C and D. Under FAA regulations and the defendant's company policy, *all* off-duty flight attendants, on layover or otherwise, are prohibited from consuming alcohol within eight hours of the time that they report to duty. *See* Owens Dep., p. 74; Whittle Affidavit, para. 6. In addition, pursuant to the defendant's company layover policy, a flight attendant must notify the defendant if she plans to be absent from the hotel for more than six hours during a particular layover. *See* Defendant's Supplemental Brief, Exhibits C and D (excerpts from the defendant's in-flight service handbook). Moreover, "Flight attendants at layover must be available for assignment at all times, if given a reasonable amount of advance notice." *Id.* This provision, however, is interpreted to mean that a flight attendant who is contacted by the defendant and informed of a re-route must accept the assignment which is given.[2] *See* Whittle Affidavit, para. 8. This language does not require a flight attendant to remain on call, to carry a beeper, or to wait at the hotel for a reassignment. *Id.* If there is a re-route and the subject flight attendant is not reached by the defendant, she would not be disciplined by the defendant for her failure to make the rescheduled flight. *Id.* The plaintiff does not dispute this fact.

This court finds, as a matter of law, that under these circumstances, layovers should not be included in the hours of service computation. Although the plaintiff's time was

---

**2.** A re-route is a situation in which a flight attendant's schedule is changed. *See* Whittle Affidavit, para. 7. Most flight attendant trips do not involve re-routes, however. *Id.; see also* Plaintiff's Dep., p. 85–89. "While re-routes do occur, [f]light attendants are normally notified of a re-route prior to their arrival to a layover airport, and are rarely notified of re-routes after they reach the layover hotel." *See* Whittle Affidavit, para. 7. Consequently, re-routes infrequently interrupt a flight attendant's ability to use her time as she wishes while on a layover.

not totally unrestricted during layover periods, it was certainly not *severely* restricted. The plaintiff did not spend the hours during her layovers engaged in her principal work activities. The time she spent on layovers was predominately for her benefit, not the defendant's. The plaintiff could use the time for personal activities, including, but not limited to, going to concerts, going to dinner, going shopping, attending movies, etc. In essence, she was free to do whatever she wanted to do. The only true restriction imposed upon the plaintiff, and all of the defendant's other "off-duty" flight attendants on layovers, was that she could not consume alcohol or drugs. This limitation, however, is not severe enough to convert "off-duty" time into "on-duty" or "on-call" hours, which would be includable in the hours of service computation under the FMLA.

In *Rousseau*, the Fifth Circuit held that time spent away from the employee's home did not constitute hours worked for FLSA purposes. 805 F.2d at 1248–49. The court considered a situation in which employees lived and worked on off-shore oil barges for week-long periods. *Id.* at 1247. The employees contended that because they could not leave the barges and could carry out only limited activities on them, the time spent on the barges, even while engaged in personal activity, should be considered "hours worked" under the FLSA. *Id.* at 1248. The Fifth Circuit disagreed, concluding that since the employees were free to engage in a "variety of recreations and amusements" during their off-duty times on the barge, such time could not be included in the hours worked calculations under the FLSA. *Id.*

Likewise, in *Bright*, the plaintiff, a hospital equipment repair technician, had substantial restrictions on his off-duty time. During his off-duty hours, he was required to carry a beeper and was required to arrive at the hospital within twenty minutes of being called. *Bright*, 934 F.2d at 679. No other hospital equipment repair technicians shared

this type of "on-call" duty. *Id.* Moreover, the plaintiff took no vacation, and he had no days off. *Id.* Although the Fifth Circuit noted that the plaintiff's job was undesirable and even oppressive, the court held that these substantial restrictions on his time did not convert the "on-call" time into working time under the FLSA. *Id.* at 678–79.

Similarly, in *Birdwell*, the Eleventh Circuit held that police detectives who were "on-call" could not be considered to be working for FLSA purposes. 970 F.2d at 809–10. The detectives were required to stand-by to be called to work and could not leave their homes unless they left a forwarding number or kept a beeper. *Id.* at 804. In addition, they could not leave town or consume alcohol. *Id.* Even with these limitations, the court concluded that the detectives' time was not so restricted that it could not be used predominately for their benefit. *Id.* at 810. The Eleventh Circuit found that they could do anything they normally could so long as they were able to respond to a call promptly and soberly. *Id.; see also Gilligan v. City of Emporia*, 986 F.2d 410 (10th Cir.1993) (city sewer workers, who had to quickly respond to pager calls and to stay within city limits and who could not consume alcohol, were not considered to be working for FLSA purposes); *Martin v. Ohio Turnpike Commission*, 968 F.2d 606 (6th Cir.1992) (maintenance workers who were on-call for emergency work were not effectively prevented from using on-call time for personal pursuits, and thus were not working during their on-call time); *Kelly v. Hines–Rinaldi Funeral Home, Inc.*, 847 F.2d 147 (4th Cir.1988) (funeral home employee who was required to stay on work premises from midnight until 6:30 a.m. is not working for FLSA purposes during that time); *Allen*, 724 F.2d 1131 (guards who were required to remain at their plant were not entitled to credit for hours worked under the FLSA during times when they were free to sleep, eat, watch movies, play pool, and engage in other personal activities).[3]

**3.** As the defendant points out, the regulations promulgated by the Department of Labor under the FLSA address a situation which is somewhat similar to that of one of the defendant's flight attendants on a layover. In explaining how to

calculate hours worked for truck drivers, the Department explains that when a truck driver is sent from one city to another, "leaving at 6:00 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6:00

As these cases clearly illustrate, the time that the plaintiff spent on a layover cannot be classified as "hours worked" for purposes of the FMLA. Regardless of whether she was considered to be "off-duty" or even "on-call" during layover periods, her time was not sufficiently restricted to covert it to hours worked. Because this court finds that no reasonable jury could conclude that the time that the plaintiff spent on her layovers was spent predominantly for the defendant's benefit, this court holds, as a matter of law, that layover hours may not be used in computing the plaintiff's hours worked for purposes of the FMLA. Consequently, the plaintiff is not an eligible employee under the Act, and this court must grant the defendant's motion for summary judgment.

### III. CONCLUSION

For the all the foregoing reasons, this court hereby GRANTS the defendant's motion for summary judgment.

SO ORDERED.

p.m. when he again goes on duty for the return trip the idle time is not working time." 29 C.F.R. § 785.16(b). The case at bar is sufficient-ly analogous to the example provided by the Department.